Curia, per
Colcock, J.
The principal ground now made does not seem to have been much considered below. I am, in the first place, constrained to think that the case has been unnecessarily encumbered with the fact, that the bonds to which the complainants were sureties had been assigned to the bank, and with a great deal of argument founded on that fact, when it can have no possible bearing on the rights of the complainants. Their equitable claim to the aid of this court arises out of the original contract made by their principal with the defendant, and their subsequent payment of the two bonds to which they were sureties. To whom they were paid was not a matter which could either increase or diminish their equitable claim, nor could the fact of the bonds having been assigned create any other right than that which they had before.
The first, and the important question in the case is, whether the defendant is bound by the purchase at the sale made by virtue of the execution ? It is said that he could acquire no more than the equity of redemption under that sale; but yet that he must be held accountable for the fifteen thousand dollars which he bid for the property, under a supposition that he was buying the fee-simple. And this position is maintained by attempting to show that a court of equity never relieves against a mistake at law, though it will always relieve against *602 a*mistake of fact. Now, without attempting to investigate the propriety of this distinction, as being generally well founded, it is obvious that cases may arise in which it becomes the duty of a court of equity to relieve against the consequences of a mistake at law as well as against those of a mistake of fact. The law is sometimes doubtful. A sudden and important alteration of the well established doctrine on any particular subject, by a crude undigested act of the legislature, oftentimes produces such uncertainty as to render it extremely difficult to know wrhat the law is, until the proper tribunals shall have given the act some exposition. And this certainly was the situation of the country, in relation to the act of 1791, until the decision ex parte the city sheriff.
The act of 1791 declared that the mortgagor was the owner of the land, notwithstanding the conveyance to the mortgagee, and says the land is only to be considered as a pledge. Now under that state of things it was supposed that the interest of the mortgagor might as well be disposed of by a sale under execution as by the usual mode of foreclosing the mortgage in equity, or by the mode prescribed by the act, which applied only to some particular cases; and it is admitted that in this case the defendant thought he was selling the fee. And it has been further stated, and not contradicted, that he was confirmed in such opinion by that of one of the most distinguished members of the bar. Be that as it may, there was, to say the least of it, some confusion created by the act of 1791 and the subsequent act of 1797; and although the conduct of the defendant has been complained of as hard and rigorous, 1 confess I can discover nothing in it which should preclude him from the benefit of that relief which has been afforded in many cases of a similar kind. His debtor failed to comply with his contract, and he sought the remedy which *the law gave him, and it is evident, meant to use it in legal form. His debtor had left the State. There is no evidence of any overtures of accommoda. tion. What then was the rational conclusion? I think no other could be drawn from the circumstances, than that the property was abandoned by the debtor. Had there been a regular foreclosure either at law orin equity, there would have been no ground left for this application. But it is well established that relief is given in cases where the mistake has been clearly one of law. And the authorities relied on put the matter beyond all doubt, if indeed it could be doubted at this day. The only case on which I shall make any particular comment is that of Hunt v. Rousmanier, 8 Wheat. 215, in which the point is expressly decided in the opinion delivered by Chief Justice Marshall, in which he refers to some of the English cases which have been relied on in the argument and says, “although we do not find the naked principle that relief may be granted on account of ignorance of law asserted in the books, we find no case in which aplain and acknowledged mistake in law is beyond the reach of equity,” and surely no case can prove more clearly that such mistake is not beyond the reach of law, than the case of Landsdown v. Landsdown, Mosely’s Rep. 346. The ignorance in that case was that the complainant was entitled as eldest son to the estate; and yet relief was afforded in so plain a mistake.
It being determined then that the defendant is not to be held liable on the purchase made under the execution, it follows of course that *603 the original debtor, William S. Hasell, is still entitled to the equity of redemption, and the defendant is to be considered as a mortgagee in possession, and as such liable to account for the rents and profits.
But as no claim is set up by the mortgagor, it becomes a question whether the complainants are entitled* to any and what relief; and on this part of the case it is certainly not necessary, after the decision in the case of Hampton v. Levy, 1 M’Cord’s Cha. Rep. 107, that much should be said. The equitable claim of a surety to all the securities given by the principal to his creditors is now too well established and two familiar to need anv illustration. The sureties in this case had a right to rely and no doubt did rely on the mortgage as operating as a counter security in their favor, to the amount of whatever the land would bring at public sale. 1 say public sale ; for as all contracts are supposed to be made in reference to the law of the land, they had a right to calculate that, if their principal failed to pay the debt, the mortgage would be foreclosed according to law; and in such case it was well known that the property would be sold at public sale and on a reasonable credit; for notwithstanding all that has been said against the exercise of this power by the court of equity of “selling on credit,” it seems to be now too well established to admit of any doubt; and therefore both the defendants and complainants may be considered as contracting with reference to this power of the court — a power which it is not pretended the court can exercise to an arbitrary extent, any more than any other discretionary power (of which there are an infinite number vested in all the higher courts both of law and equity.) The property not having been disposed of then according to law, if on an account taken it should appear that the debt is not yet paid, the mortgage is to be considered as foreclosed and the property must be sold on a credit. On this part of the case we concur with the chancellor; but we do not conceive that the defendant is in any event liable to refund the money paid by the sureties. If the rents and profits of the wharf and the proceeds of the sale cover the bonds to which they are sureties, it is well; but if not, they must sustain the loss, *for their equity extends no further. Whether the property when brought to the hammer should sell for its value or for a less sum was a risk which they the sureties took upon themselves.
It is therefore ordered and decreed, that the sale made by the sheriff of Charleston district, of a moiety of the wharf mentioned in the pleadings, be set aside, and that the said moiety of William S. Hasell in the wharf be sold by the master of this court, giving one month’s notice, and on a credit of nine months, -with personal security if required by the master, in the manner directed by the 44th rule of the court. And it is further ordered that the master do take an account of the rents and profits of the wharf, and that the defendant George Chisolm be charged with one moiety of the rents and profits as a mortgagee in possession. All just allowances to be made to the defendant for necessary expenses of repairs and management and improvement, after which the proceeds to be applied in the first place to the interest due, to be calculated according to the contract, and to his (defendant’s) costs at law and in equity; and in the next place to the satisfaction of the principal due to the defendant on the bonds of Wil *604 liam S. Hasell in his hands, of which an account is also to be taken— and that the balance which may be still due to defendant (if any) be paid in the first place out of the moneys arising out of the sale of the property, and the surplus if any there be, to be then applied to the repayment to the complainants of the sums paid by them and the interest which has since accrued.

Decree modified.